**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FRANK M. PECK,                      )
                                    )   3:09-cv-00381-LRH-VPC
    Plaintiff,                  )
                                    )
    v.                          )   **REPORT AND RECOMMENDATION**
                                    )   **OF U.S. MAGISTRATE JUDGE**
THOMAS, *et al.*,                   )
                                    )
    Defendants.                 )   February 11, 2013
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#92).[1] Plaintiff opposed (#98) defendants replied (#100). The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#92) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Frank M. Peck ("plaintiff"), a *pro se* inmate, is currently incarcerated at High Desert State Prison ("HDSP") in the custody of the Nevada Department of Corrections ("NDOC") (#84). However, the allegations set forth in plaintiff's fifth amended complaint pertain to events which occurred while plaintiff was being transferred from the Second Judicial District Court to the Washoe County Regional Detention Facility ("WCRDF"). *Id.* On September 19, 2012, plaintiff filed his fifth amended civil rights complaint, pursuant to 42 U.S.C. § 1983, alleging that either defendant Johnston or defendant Zerby used excessive force against him, in violation of the Eighth

---

[1] Refers to the court's docket numbers.

-1-

Amendment; and that the other defendants failed to intervene to prevent plaintiff's injury, in violation of the Eighth Amendment. *Id.* at 4-5.

Plaintiff alleges the following: on August 25, 2001, an unidentified Washoe County Sheriff's Deputy and a Sparks Police Officer threatened plaintiff for refusing to testify against his brother, Larry Peck (#84, p. 4; #98, p. 3).[2] Thereafter, plaintiff received several threatening letters (#98, p. 3). In May 2009, defendants—who are four Washoe County Sheriff's Deputies—told plaintiff that they "knew who my brother was and that they had also transported him" (#84, p. 4). Either defendant Johnston or defendant Zerby (whoever is shorter) ordered plaintiff to stand against the wall and exhale. *Id.* at 3-4. When plaintiff followed these instructions, the defendant cinched plaintiff's belly chain so tightly that his "skin even entered a link and was cut and bleeding from being pinched." *Id.* Plaintiff alleges that the chain was so tight that he could barely speak or breathe. *Id.* at 5. Plaintiff also alleges that all four defendants were "keenly aware of my distress" and that he had a severe anxiety attack and passed out in the patrol car. *Id.* The next day, plaintiff submitted a medical kite stating that he had urinated blood, but the medical kite was ignored. *Id.*

Defendants allege the following: On May 12, 2009, plaintiff was convicted of a felony (#92, p. 3). At the time, plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC"), having previously been convicted of a felony. *Id.* From May 6, 2009 through May 12, 2009, NDOC temporarily transferred plaintiff from NNCC to WCRDF to allow plaintiff to appear at his criminal trial (#92-1, Ex. B). On May 6, 7, 8, 11 and 12, 2009, defendants transported plaintiff from WCRDF to the Second Judicial District Court and back to attend his criminal trial.[3] *Id.* On May 8, 2009, after court had concluded, defendants prepared plaintiff for transport back to WCRDF (#92-1, Ex. C,

---

[2] Plaintiff's brother, Larry Peck, was ultimately convicted of murdering Reno Police Officer John Bohach (#84, p. 4).
[3] On May 6, 7, 8 and 11, 2009, the deputies assigned to the transport detail were the four named defendants—Johnston, Zerby, Wheeler and Thomas. On May 12, 2009, the deputies assigned to the transport detail were three of the four named defendants—Johnston, Wheeler and Thomas, along with Sergeant Green (#92-1, Ex. B, p. 13).

-2-

¶ 9, Ex. D, ¶ 9, Ex. E, ¶ 9, Ex. F, ¶ 9). Plaintiff never told defendants that his belly chain was too tight. *Id.* at ¶ 10. Defendants were not aware that plaintiff's belly chain was too tight, and defendants did not observe plaintiff to be in any distress between the time his belly chain was fastened and the time he returned to WCRDF. *Id.* at ¶¶ 11-12. Each day that defendants transported plaintiff to the Second Judicial District Court, he was subjected to a strip search (#92-1, Ex. B, pp. 5, 7, 9, 11, 13). Each day after plaintiff returned to WCRDF, he was again subjected to a strip search (#92-1, Ex. C, ¶ 13, Ex. D, ¶ 13, Ex. E, ¶ 13, Ex. F, ¶ 13). Defendants did not observe plaintiff to have any injuries, and plaintiff did not complain about any injuries. *Id.* at ¶ 14. If defendants had noticed any injuries, they would have taken plaintiff to the infirmary. *Id.* On May 9, 2009, plaintiff submitted a complaint to medical staff, alleging he had abdominal pain and had urinated blood due to his belly chain being "so tight I could only take a very shallow breath during transport yesterday" (#92-1, Ex. G).

Defendants further allege that they had no contact with plaintiff prior to May 2009; they did not discuss plaintiff's refusal to testify against his brother, Larry Peck, in connection with John Bohach's murder; they did not write any threatening letters to plaintiff; and they have no knowledge of any threats made to plaintiff (#92-1, Ex. C, ¶¶ 4, 6-8, Ex. D, ¶¶ 4, 6-8, Ex. E, ¶¶ 4, 6-8, Ex. F, ¶¶ 4, 6-8).

Defendants move for summary judgment on the grounds that: (1) defendants did not use excessive force to restrain plaintiff and did not have the requisite mental state for an excessive force claim (#92, pp. 8-9); (2) defendants cannot be found liable for failing to intervene because they were not aware that plaintiff's waist restraint was too tight (#92, p. 11); and (3) in the event the court finds that there is a potential constitutional violation, defendants are entitled to sovereign immunity (#92, p. 12). Defendants attach several documents to support their motion for summary judgment,

including: (1) a letter plaintiff allegedly received from the Washoe County Sheriff's Office threatening that plaintiff would "pay" for not testifying against his brother (#92-1, Ex. A); (2) plaintiff's Washoe County Sheriff's Office Detention Response Team Transport After-Action Report from May 6, 7, 8, 11 and 12, 2009;[4] (3) the affidavit of Christopher Scott Thomas (#92-1, Ex. C); (4) the affidavit of Daniel Thomas Wheeler (#92-1, Ex. D); (5) the affidavit of Michael Zerby (#92-1, Ex. E); (6) the affidavit of Ryan Johnston (#92-1, Ex. F); (6) plaintiff's May 9, 2009, medical services invoice (#92-1, Ex. G);[5] (7) answer to defendants' first set of interrogatories (#100-1, Ex. A);[6] (8) answer to defendants' first request for production of documents (#100-2, Ex. B);[7] (9) a letter from defendants' counsel to NDOC requesting plaintiff's medical records (#100-3, Ex. C);[8] (10) plaintiff's physician's orders from May 12, 2009 (#100-4, Ex. D);[9] (11) the affidavit of Ryan Johnston (#100-5, Ex. E); (12) the affidavit of Christopher Scott Thomas (#100-6, Ex. F); (13) the affidavit of Daniel Wheeler (#100-7, Ex. G); and (14) plaintiff's April 29, 2009, nursing evaluation tool (#100-8, Ex. H).[10]

Plaintiff opposes defendants' motion for summary judgment on the grounds that: (1) defendant Johnston or defendant Zerby retaliated against plaintiff for refusing to testify against his brother, Larry Peck, by cinching plaintiff's belly chain with enough force to almost completely prevent plaintiff from breathing (#98, p. 14); (2) the other defendants were all "keenly aware" of plaintiff's distress; they had an opportunity to stop the assault; and they had an opportunity to loosen plaintiff's belly chain, but these defendants made a conscious decision not to intervene (#98, p. 18); and (3) defendants are not entitled to qualified immunity (#98, pp. 20-22). Plaintiff also disagrees

---

[4] Authenticated by the affidavit of Darrin Rice (#106-1, p. 2).
[5] Authenticated by the affidavit of Mark Julius (#106-1, p. 16).
[6] Authenticated by the affidavit of Herbert B. Kaplan (#106-1, p. 21).
[7] Authenticated by the affidavit of Herbert B. Kaplan (#106-1, p. 21).
[8] Authenticated by the affidavit of Herbert B. Kaplan (#106-1, p. 22).
[9] Authenticated by the affidavit of Herbert B. Kaplan (#106-1, p. 22).
[10] Authenticated by the affidavit of Mark Julius (#106-1, p. 16).

with defendants' rendition of the facts on several points.  Plaintiff contends he was never subjected to a full-body strip search during the time in which he was being transported between WCRDF and the Second Judicial District Court (#98, p. 28).  Instead, plaintiff claims he was permitted to change in an enclosed changing room completely out of the view of all deputies.  *Id.* at 5.  Plaintiff also claims that on May 8, 2009, he begged defendants Wheeler and Thomas to loosen his chains, but they ignored his pleas.  *Id.* at 7.  Finally, plaintiff claims that he has never been ordered to exhale before being fitted with belly chains, and that the order to exhale is not part of the prison's policy for applying "auxiliary handcuff restraint devices."  *Id.* at 19, 23.  Plaintiff asserts that defendant Johnston or defendant Zelby ordered him to exhale in order to cinch plaintiff's belly chains too tightly and impede plaintiff's breathing (#98, p. 19).

Plaintiff also attaches several documents to support his opposition to defendants' motion for summary judgment, including: (1) the first page of the letter plaintiff allegedly received from the Washoe County Sheriff's Office threatening that plaintiff would "pay" for not testifying against his brother (#98, Ex. A, p. 33); (2) a partial excerpt from the Washoe County Sheriff's Office Handcuff Policy (#98, Ex. B, p. 35); (3) plaintiff's May 9, 2009, medical services invoice (#98, Ex. C, p. 37); (4) plaintiff's disciplinary history report (#98, Ex. D, pp. 39-40); (5) a handwritten "timeline" of DNA sampling (#98, Ex. E, p. 42); (5) plaintiff's Washoe County Sheriff's Office Detention Response Team Transport After-Action Report from May 12, 2009 (#98, Ex. F, pp. 44-45); (6) the September 7, 2012, minutes of the court (#98, Ex. G, pp. 48-49); (7) correspondence between plaintiff and defendants' counsel (#98, Ex. H, pp. 51-53); (8) plaintiff's opposition to defendants' motion to dismiss (#98, Ex. I, pp. 55-67); (9) the affidavit of Larry James Peck (#98, Ex. J, p. 69); and (10) an excerpt from defendants' motion to dismiss (#98, Ex. K, p. 71).

Defendants reply, stating that plaintiff was subjected to an unclothed, observed strip search each day prior to transport to the Second Judicial District Court and also upon return to WCRDF prior to re-introduction into the general population (#100-5, ¶ 4; #100-6, ¶ 4; #100-7, ¶ 4). Defendants state that no injuries were observed during the strip searches and that plaintiff did not complain of any injuries. Defendants contend that if they had observed any injuries, they would have documented the injuries and taken plaintiff to the infirmary. *Id.* at ¶ 5. Defendants also state that ordering an inmate to exhale before applying auxiliary restraints is not contrary to policy or practice. *See id.* at ¶ 6 ("The command to exhale and inhale completely is common during the application of waist chains, as inmates will push their stomach out while deputies are applying the restraints as a way to defeat them.").

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.   Legal Standards**

**1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured

by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

**1.  Excessive Force**

When an inmate claims that his Eighth Amendment right to be free from cruel and unusual punishment has been violated based on a prison official's use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the court considers the following factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). There is no need to show the inmate suffered a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry. *Id.* at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to prison officials

when reviewing the use of force and cannot substitute its own judgment for the judgment of prison officials.  *Whitley*, 475 U.S. at 322.  Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury.  *Id.*

Plaintiff alleges that on May 8, 2009, defendant Johnston or defendant Zerby (whoever is shorter) cinched plaintiff's belly chain so tightly that the chain cut into his skin and he bled (#84, p. 4).  Plaintiff contends the belly chain was so tight that he could barely speak or breathe; and as a result, plaintiff had a severe anxiety attack and passed out in the patrol car.  *Id.* at 5.  Plaintiff asserts that the other defendants were "keenly aware of plaintiff's distress" and that they purposefully inflicted this pain upon plaintiff in retaliation for plaintiff's refusal to testify against his brother, Larry Peck, eight years earlier.  *Id.*

Defendants contend there is no evidence that any defendant used excessive force in applying plaintiff's belly chain (#92, p. 10).  Defendants allege that plaintiff did not complain that his belly chain was too tight (#92-1, Ex. C, ¶ 10, Ex. D, ¶ 10, Ex. E, ¶ 10, Ex. F, ¶ 10).  Defendants also allege that they were not aware that plaintiff's belly chain was too tight and did not observe plaintiff to be in any distress.  *Id.* at ¶¶ 11-12.  Defendants state that each day that plaintiff was transported to the Second Judicial District Court from WCRDF, he was subjected to two unclothed, observed strip searches—one prior to transport to the courthouse and one prior to re-introduction into the general population at WCRDF (#100-5, ¶ 4; #100-6, ¶ 4; #100-7, ¶ 4).  Defendants assert that they did not observe plaintiff to have any injuries during these strip searches, and if they had observed injuries, they would have documented the injuries and taken plaintiff to the infirmary.  *Id.* at ¶ 5.

Defendants aver that their only contact with plaintiff occurred in May 2009 (#92-1, Ex. C, ¶ 4, Ex. D, ¶ 4, Ex. E, ¶ 4, Ex. F, ¶ 4).  Defendants state that they never approached plaintiff to discuss the possibility of plaintiff testifying against his brother, and did not write the threatening letter that

plaintiff produced during discovery. *Id.* at ¶¶ 6-7. Defendants also state that they have no knowledge of any threats made to plaintiff. *Id.* at ¶ 8.

The court finds that there is no evidence that any defendant used excessive force to restrain plaintiff on May 8, 2009. First, to the extent plaintiff argues he is a model inmate and defendants did not need to use waist or belly chains (#98, p. 14), the court finds that waist or belly chains are used as a matter of course to provide additional security when transporting prisoners (#98, Ex. B, p. 35).

Second, there is no objective evidence that plaintiff's waist or belly chains were too tight. Plaintiff never complained that the belly chain was hurting him, and defendants were not aware that plaintiff's belly chain was too tight, as they did not observe plaintiff to be in any distress (#92-1, Ex. C, ¶¶ 10-12, Ex. D, ¶¶ 10-12, Ex. E, ¶¶ 10-12, Ex. F, ¶¶ 10-12). Although plaintiff alleges for the first time in his opposition that he begged defendants Wheeler and Thomas to loosen his chains (#98, p. 7), "[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Further, once plaintiff returned to WCRDF, he did not lodge a complaint about the belly chain with other deputies, despite the fact that plaintiff had additional days of trial coming up and the same deputies were going to continue to transport him.

In addition, there is no objective evidence that plaintiff suffered any injury—let alone a serious injury—from the belly chain. On the days in which plaintiff was transported to the Second Judicial District Court from WCRDF, he was subjected to daily strip searches. The strip searches were unclothed in the presence of deputies, and defendants did not observe plaintiff to have any injuries (#100-5, ¶¶ 4-5; #100-6, ¶¶ 4-5; #100-7, ¶¶ 4-5). Defendants assert that if they had observed injuries, they would have documented the injuries and taken plaintiff to the infirmary. *Id.* at ¶ 5. Plaintiff contends he was never subjected to an unclothed strip search, but instead, was allowed to

change in and out of his clothes before and after transport to the courthouse in a private, enclosed changing-room (#98, p. 5). However, "[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment. *Villiarimo*, 281 F.3d at 1061. Further, plaintiff's medical records do not reveal the existence of any injury caused by the belly chain. On May 12, 2009, plaintiff's physician's orders simply indicate that plaintiff should resume his routine medication (#100-4, p. 3). The records do not indicate any bodily injury and do not mention plaintiff's complaint about blood in his urine.

Third, even if plaintiff's waist or belly chains were too tight, there is no evidence that defendant Johnston or defendant Zerby applied the chains "maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 7. Plaintiff contends that defendants purposefully cinched plaintiff's belly chain too tightly in retaliation for plaintiff's refusal to testify against his brother, Larry Peck, eight years earlier (#84, p. 5). To support this contention, plaintiff attempts to set forth facts establishing a connection between the four defendants and several threats plaintiff has allegedly received over the years.

For example, plaintiff contends that when he was at Lovelock Correctional Center ("LCC") in 2001, an unidentified Washoe County Sheriff's Deputy personally threatened him for refusing to testify against his brother (#84, p. 4). Plaintiff also contends that a Washoe County Sheriff's Deputy sent him a handwritten letter, threatening to keep him in prison for a long time for refusing to testify against his brother (#92-1, Ex. A). The court finds that these allegations do not establish that defendants had a malicious or sadistic motive to cause plaintiff harm. For one, there is no evidence that defendants were involved in these threats. Defendants had no contact with plaintiff and had never even met plaintiff prior to the May 2009 transport between the Second Judicial District Court and WCRDF (#92-1, Ex. C, ¶ 4, Ex. D, ¶ 4, Ex. E, ¶ 4, Ex. F, ¶ 4). There is simply no evidence that

the deputy who threatened plaintiff at LCC in 2001 is one of the named defendants or that any of the defendants sent plaintiff a threatening letter.  Further, all defendants have affirmatively stated that they never approached plaintiff about testifying against his brother and did not write the threatening letter that plaintiff attaches to his opposition as exhibit A.  There is also no evidence that anyone at the Washoe County Sheriff's Office instructed defendants to seek retribution for John Bohach's death by inflicting pain upon plaintiff.  Thus, there is simply no evidence that defendants intended to cause plaintiff pain or injury.

Plaintiff also contends that in May 2009, defendants informed him that they had transported his brother (#84, p. 4).  Even assuming that defendants told plaintiff that they had previously transported his brother, this statement does not give rise to an inference that defendants harbored a malicious intent to cause plaintiff harm.  Defendants state that they never spoke with plaintiff about the fact that he chose not to testify against his brother (#92-1, Ex. C, ¶6, Ex. D, ¶ 6, Ex. E, ¶ 6, Ex. F, ¶ 6).  If defendants mentioned to plaintiff that they had also transported Larry Peck, it shows nothing more than the fact that defendants knew that plaintiff was related to Larry Peck.

Finally, plaintiff contends that defendant Johnston or defendant Zerby's instruction to exhale evidences a malicious intent to inflict harm, as exhaling does not appear within the Washoe County Sheriff's Office policy for applying "auxiliary handcuff restraint devices," and plaintiff has never been told to exhale before being fitted with waist or belly chains in the past (#98, pp. 10, 23).  Plaintiff asserts that the only inference that can be made from the order to exhale is that defendants intended to impede plaintiff's breathing.  *Id.* at 19.  However, the court does not infer that defendant Johnston or defendant Zerby gave this order with a malicious intent to inflict harm upon plaintiff.  The excerpt from the Washoe County Sheriff's Office Handcuff Policy does not describe the proper procedure for restraining an inmate (#98, Ex. B).  Defendants Johnston, Thomas and Wheeler state

that all sheriff's deputies are trained to use waist restraints, and that plaintiff's belly chain was applied pursuant to policy and standard practice (#100-5, ¶ 6; #100-6, ¶ 6; #100-7, ¶ 6). These defendants also state that ordering an inmate to exhale and inhale completely is common before applying waist restraints, as inmates will push out their stomachs in an attempt to defeat the chains. *Id.* The court finds no evidence that defendant Johnston or defendant Zerby ordered plaintiff to exhale in a malicious or sadistic attempt to inflict pain or suffering upon plaintiff.

The court underscores its obligation to give deference to prison officials when reviewing the use of force. *Whitley*, 475 U.S. at 322; *see Beard v. Banks*, 548 U.S. 521, 530 (2006). Here, the record does not indicate that the amount of force used was unnecessary or excessive. In addition, there is nothing in the record to suggest that defendants acted maliciously or sadistically to harm plaintiff. Instead, the evidence suggests that defendants acted in good-faith and used the appropriate amount of force to restrain plaintiff for transport. As the Supreme Court has noted, the prisoner must point to sufficient evidence to demonstrate that he can prevail on the merits. *Whitley*, 475 U.S. at 322. Plaintiff has provided no evidence to indicate that he was subjected to excessive force or that defendants Johnston or Zerby acted with a malicious intent to cause plaintiff harm. The court finds no indication that defendants used excessive force to restrain plaintiff on May 8, 2009; or that defendants' actions exhibited a reliable inference of wantonness. *See id.*

Accordingly, the court recommends that defendants' motion for summary judgment (#92) be granted.[11]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants are entitled to summary judgment in their favor, as there are no genuine issues of material fact for trial.

---

[11] Because the court recommends that defendants' motion for summary judgment (#92) be granted as to plaintiff's excessive force claim, the court need not reach the issues of failure to protect/intervene or qualified immunity.

-13-

Therefore, the court recommends that defendants' motion for summary judgment (#92) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and LR Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#92) be **GRANTED**.

**DATED:** February 11, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**